### DAVIS et al, v. DAVIS et al.

No. 10583—Opinion Filed June 20, 1922.

(Syllabus.)

1. Wills—"Holographic Will"—Statute.

A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed. Section 8347, Revised Laws of Oklahoma, 1910.

2. Wills—Probate—Burden of Proof—Execution and Publication.

The burden of proof rests upon the proponents of a will to establish by a preponderance of the evidence that the will was executed and published according to the provisions of the statutes. McCarty et al. v. Weatherly et al., 85 Okla. 123, 204 Pac. 632.

3. Same—Holographic Will.

Where a holographic will is offered for probate and the name of the testator is not signed at the bottom of the will, but appears only in the body of the instrument, evidence showing that the deceased, prior to his death, had made isolated statements to the effect that he had made a will, without identifying the paper purporting to be his will, does not meet this proof.

4. Same—Admission of Will to Probate—Insufficiency of Evidence.

The record examined, and held, that the evidence does not sustain the judgment of the trial court.

Error from District Court, Comanche County; Cham Jones, Judge.

Proceeding in the County Court of Comanche County by Pearl Davis et al., as proponents, for the probate of an instrument as the last will and testament of R. B. Davis, deceased. The will was denied probate, and proponents appealed to the District Court. The will was admitted to probate, and respondents appealed. Reversed and remanded.

Keaton, Wells & Johnston, J. F. Thomas, Benson & Benson, and Donald & Donald, for plaintiffs in error.

S. I. McElhoes, for defendants in error.

MILLER, J. This proceeding was instituted in the probate division of the county court of Comanche county, Okla., by Pearl Davis et al., asking for the probate of a certain instrument as the last will and testament of R. B. Davis, deceased, late of Comanche county, Okla. J. P. Davis and the other heirs of R. B. Davis, deceased, except those named as beneficiaries in the will, joined in a protest against admitting the will to probate. The county court refused to admit it to probate. Pearl Davis and his cobeneficiaries appealed to the district court of Comanche county. On a full hearing had before the district court of Comanche county that court, on November 7, 1918, ordered the paper probated as the will of the deceased. Notice of appeal was given and this appeal perfected. J. P. Davis and others associated with him objecting to the probate of the will appear here as plaintiffs in error. Pearl Davis and his associates appear as defendants in error, and they will be so referred to.

The plaintiffs in error, in their brief, refer to their assignments of error as follows:

"The petition in error contains a number of assignments of error, including the assignment so necessary to a consideration by this court, that the court erred in overruling appellant's motion for a new trial, and that the court erred in admitting said will to probate."

The only question discussed is whether or not the court erred in admitting the will to probate. The facts necessary to determine this question may be briefly stated as follows:

R. B. Davis died April 16, 1918, as a resident of Comanche county, Okla., and leaving an estate therein. The defendants in error claim this estate under a holographic will dated August 1, 1901. The plaintiffs in error are the other heirs at law of the deceased. On April 1, 1918, the deceased

executed another will, which, after making certain specific bequests in amounts of one dollar, left the estate to the defendants in error. This will was filed for probate, but it appearing that the witnesses thereto did not sign in the presence of the testator, the proponents of the will did not insist on it being admitted to probate.

Some two months after the death of R. B. Davis, the will in question in this case was found in an old trunk, which the evidence discloses Davis kept locked, and, prior to his death, he carried the key. The will in question reads as follows:

"Know all men by these presents that I, R. B. Davis, have this first day of August, 1901, made and executed this my will to L. S. Davis and his children, Edgar Davis and Mabel Davis and Claude Davis and Pearl Davis, to take effect at my demise as follows, to wit: All my land and all of my stock, both horses and cattle, and all of my money, bank deposits, notes promissory and otherwise, and all my house furnishings. In fact all of my incumbrances to be divided equally between all the above named when Pearl Davis, the youngest, becomes of age, and I hereby name L. S. Davis as trustee for this will, and I further enjoin that there be no legal procedure interceded against this document.

"Witness my hand this the first day of August, 1901. Witness."

This will is not signed at the bottom, but it was shown by opinion testimony of a large number of witnesses to be in the handwriting of the deceased. At least six witnesses, who appear to be disinterested, testified that the deceased had told them on different occasions that he had made a will and had left his property to Stanhope's children. It is admitted the Stanhope referred to in the testimony of these witnesses was a brother of the deceased and is the one referred to in the will as L. S. Davis, and Stanhope's children referred to are the other persons named in the will and are the defendants in error here.

The evidence further discloses that the deceased formerly resided in Montague county, Tex., and removed to Comanche county, Okla., bringing with him his brother, Stanhope, and Stanhope's four children, who are the beneficiaries under the will. That he took care of Stanhope's children when they were small, and they in turn took care of the house, making a home for him and helping him with his farm work. They lived together as a family, and deceased was practically a father to the children.

The plaintiffs in error contend that the name R. B. Davis written by him in the top of the instrument is not a sufficient signing to make the paper a valid will; their contention being that it must either be signed at the bottom or the will must show on its face he intended that his name appearing in a different part of the instrument should constitute his signature to the instrument. They say, in effect, that evidence aliunde is not admissible to prove he intended the writing of his name in the upper part of the instrument to stand as his signature. Without passing upon this question or expressing any opinion as to the admissibility of evidence aliunde, we do not think the evidence offered has sufficient probative force to establish the factum of the will.

Section 8347, Revised Laws of Oklahoma 1910, defines a holographic will as follows:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

The evidence before the court as shown by the record was that the deceased stated to the various witnesses that he had made a will and left all of his estate to Stanhope and Stanhope's children. Not that he was going to make a will or intended to make a will. Defendants in error contend this evidence established the paper offered for probate as the last will and testament of R. B. Davis, deceased. Not one of the witnesses testified they had ever seen this paper before, or that the paper had been exhibited to either of them by R. B. Davis and he had declared it to be his will or in any way indicated that his name appearing in the top of the instrument was intended by him to constitute his signature. Neither did any witness testify to the identity of this paper as the will to which R. B. Davis referred in the conversation wherein he stated he had made a will. Ordinarily, the person's name appearing in the top of an instrument, although written by his own hand, is merely descriptive of the person, unless there is competent evidence which would reasonably tend to establish as a fact that he intended it to constitute a signing of the instrument, or that his name so written by him was intended as a complete execution of the instrument.

These words appearing at the bottom of the paper offered for probate have some significance. "Witness my hand this the first day of August, 1901." The declara-

tion above quoted is so universally used as apt and appropriate words preceding the signature that they may be said to have an established meaning and import, to wit: That the execution of the instrument will be completed by signing his name immediately following such declaration of "Witness my hand." This declaration indicates that his signature or some mark or attestation made by his hand would follow to complete the execution of the instrument. The wording of the declaration is evidence of an intent to sign or make some mark with his own hand after he had made the declaration. While this may be only slight evidence of his intent to attach his signature or some mark of attestation to denote he had completed the execution of the instrument, yet it would require some evidence to rebut the import of the declaration. It cannot be presumed because he may have made statements to the effect that he had made a will, neither is it overcome by isolated statements that he had made a will, without evidence to identify this paper as the will he referred to in making the statements. He may have prepared this as a rough draft and then made a will in conformity with this rough draft which was duly signed. He may then have told different persons he had made a will, but afterwards for some reason he may have destroyed the will. The rough draft, not having been executed by him, received no further attention from him. We think the evidence lacks the probative force essential to identify this paper as his will or establish the factum of the will.

In McCarty et al. v. Weatherly et al., 85 Okla. 123, 204 Pac. 632, paragraphs 1 and 10 of the syllabus read as follows:

"1. The burden of proof rests upon the proponents of a will to establish by a preponderance of the evidence that the will was executed and published according to the provisions of the statutes."

"10. The burden of proof rests upon the proponents of a will to prove not only the due execution of the will as provided by law, but that the instrument was in fact the free and voluntary act and will of the testatrix."

The evidence does not sustain the judgment of the district court. It is insufficient to establish the factum of the will. The judgment of the district court is reversed, and this cause remanded, with instructions to sustain the judgment of the county court and deny the probate of the purported will.

HARRISON, C. J., and McNEILL, ELTING, KENNAMER, and NICHOLSON, JJ., concur.