149 So. 464

## DELAUREAL v. ROGUET'S SUCCESSION.

### No. 32222.

May 29, 1933.

Rehearing Denied July 7, 1933.

Pugh & Buatt, of Crowley, for appellant.

Dubuisson & Dubuisson, of Opelousas, for appellee.

BRUNOT, Justice.

This is a suit on a quantum meruit for services rendered the defendant, as his physician, during the seven months immediately preceding his death. The sum claimed in plaintiff's supplemental petition is $3,409, with legal interest thereon from judicial demand. There was judgment in favor of the plaintiff for $3,361, with interest and costs, as prayed for. The appellant, in argument, conceded that the quantum allowed in the judgment was not excessive; therefore, that issue, on which a great deal of testimony was taken, has passed out of the case. In substance, the other allegations of the petition present two defenses, viz.: Estoppel and an alternative plea of compensation. The plea of estoppel is based upon the plaintiff's acceptance of the legacy bequeathed to him in a provision of the will of the deceased. The will is dated August 15, 1931, and the bequest to plaintiff is as follows: "I give and bequeath unto G. R. DeLaure al, as remuneration for years of medical services, personal, close and devoted attention, the sum of One Thousand Dollars (1,000.00) and any and every indebtedness of whatever nature and kind due and owing to me."

On the date the will was written the plaintiff was indebted to the testator for certain financial obligations incurred by him that the testator had liquidated for his account.

Counsel for appellant contends that the quoted provisions of the will should be interpreted to mean that the testator intended the bequest to be remuneration not only

for the services rendered by the legatee prior to the confection of the will, but also for the services he rendered the testator thereafter. · The quoted provision of the will is not susceptible of such an interpretation. It is written in the present tense. The language is not ambiguous. It relates to, and in our .opinion it clearly expresses, the testator's intention to remunerate the legatee for services rendered during the years preceding the date of the will.

The appellant contends that Rev. Civ. Code, arts. 1720 and 1722, are governed by article 1712. Article 1712 is the general rule. We quote it: "In the. interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."

The article is controlling to this extent— the intention of the testator must be ascertained from the text of the will *without departing from the proper signification of its terms*.

As we have found that the will clearly expresses an intention to remunerate the beneficiary for past services, the only articles of the Revised Civil Code which apply are 1720 and 1721. These articles are as follows:

"A disposition, couched in terms present and past, does not extend to that which comes afterwards.

"A disposition, couched in the future tense, refers to the time of the death of the testator."

Whether or not the remuneration was greater than the value of the services rendered is no concern of the executors, for the testator

has valued those services and fixed the remuneration therefor.

It is shown that prior to the date of the will the plaintiff and the deceased were close friends and lived in the same neighborhood. They were in almost daily contact. It is said that they were like brothers of one family. During those years the plaintiff made no charge for services rendered to the deceased. About the time of the confection of the will the testator removed to a neighborhood some twenty miles distant from the plaintiff's residence. He was then the victim of a lingering illness that terminated his life in about seven months thereafter. During those months he required the medical attention of the plaintiff almost daily, and the plaintiff, from his first to his last visit to that distant point, caused his bookkeeper to enter on her "scratch" or daybook the customary physician's charge and mileage for each of said visits. The sum for which judgment was rendered is the aggregate of said charges appearing on the plaintiff's journal and ledger, with the exception of two items which the plaintiff's supplemental petition admits were erroneous charges, and two items which the trial judge deducted from the sum claimed in the supplemental petition, without assigning a reason therefor.

Counsel for appellant contends that the physicians of Vermilion parish never charged ordained ministers of the gospel for medical services, and, on that hypothesis, he argues that the bill of the plaintiff, which was first presented to the executor, is an afterthought. There is testimony in the record of two physicians other than the plaintiff, who visited the deceased professionally. Both charged

for their services and both were paid. The positive testimony of the plaintiff's bookkeeper, that the plaintiff's charges were entered in what she calls the "scratch" book, daily during approximately seven months, satisfactorily refutes counsel's contention.

We do not consider it necessary to review the testimony at greater length, for we find nothing in the record which, either in law or reason, can be adjudged a satisfactory basis for any one of the defenses urged to this suit.

For these reasons the judgment appealed from is affirmed, at appellant's cost.