20 So.2d 296

Succession of GURGANUS.

No. 37385.

Nov. 6, 1944.

Rehearing Denied Dec. 11, 1944.

R. A. Dowling, of New Orleans, for opponent, appellant.

Dart & Dart and Henry J. Read, all of New Orleans, for petitioners,

PONDER, Justice.

Mrs. Louise Gurganus Gauthier Hiler died in the city of New Orleans on February 1, 1943, leaving a succession composed of immovable and movable effects.

On May 28, 1943, Mrs. Sallie E. Gurganus, wife of William B. Gilpin and a sister of the deceased, presented the following instrument, purported to be the last will of the deceased, for probate:

"Aug 15, 1924

"My last Will & Testimony

"I Louise G. Gauthier if anything should happen that I would not return. I want by sisters Jane, Sallie, Ida Mai, Julia, Brothers, Tom & Henry to have what I own—my home to be sold & divided or one to buy the other out & pay them for it. My clothes to go to the ones that can wear them, Sallie & Jane—My piano to Julia & the things she has now. My spread (crocet) to Sallie, my others to be divided, My Diamonds ear rings to the ones that will wear them (with holes in the ears) My big ring Sallie & the small one to Ida Mai. Sallie, Ida Mai, Julia & Jane & Henry could all live at 1208 & give Tom his rent the Apt he would use—the rest of the rent to go to keep up the house,

That would leave Two Apt, one for rent & one for Tom—All other things to be divided. My big trunk to Julia & her to give each sister some of the contents.

"Signed this day of our Lord Aug 15— 1924 having my right mind & knowing what I am doing

"(Signed) Louise Gurganus Gauthier

"Give Pal Mrs. Guy W. Stanton what she might want."

Dr. Frederick W. Hiler, surviving spouse of the deceased, opposed the probate of the purported will. He took the position that the instrument was executed as a conditional or contingent will to take effect only upon the happening of a contingency, which he contended failed to occur. He prayed to be recognized as the surviving spouse in community and as such entitled to a one-half undivided interest in the community of acquets and gains. He further prayed to be recognized as the sole heir of the deceased and to be sent into possession of the decedent's undivided one-half of the community. In the alternative, he asked to be recognized as a creditor to the succession in the amount of $1,500, which he claimed he advanced from his separate funds toward the purchase of community property.

The other brothers and sisters of the deceased thereafter petitioned the court to probate the will and order it executed. They prayed for the appointment of Mrs. Sallie Gurganus Gilpin as dative testamentary executive.

Upon hearing, the lower court gave judgment recognizing the instrument as the last will and testament of the decedent; ordering the application for appointment of Mrs. Sallie Gurganus Gilpin as testamentary executrix to be published according to law; ordering an inventory and appraisement to be made of the property; recognizing Dr. Frederick W. Hiler as surviving spouse and as such entitled to an undivided one-half of the community of acquets and gains; dismissing the opposition and the demand of Dr. Frederick W. Hiler to be recognized as the sole heir of the decedent; and dismissing the alternative claim to be recognized as a creditor in the sum of $1,500.00, reserving however his right to assert the claim during the administration of the estate.

The opponent, Dr. Frederick W. Hiler, has appealed.

It appears from the record that the deceased was twice married. Her first husband, Eugene Gauthier, died sometime in 1918. The purported will was executed on August 15, 1924. Subsequently, during the month of March, 1929, the decedent was married to Dr. Frederick W. Hiler. The record discloses that property was acquired during this community.

The appellant contends that the instrument is null and void because it was predicated on a contingency which never occurred. In support of his contention he cites: 68 Corpus Juris, Wills, p. 630; In re Young's Estate, 95 Okl. 205, 219 P. 100; Ferguson v. Ferguson, Tex.Civ.App., 288 S.W. 833; American Trust & Safe Deposit Co. v. Eckhardt, 331 Ill. 261, 162 N.E. 843; Robnett v. Ashlock, 49 Mo. 171, 172;

Phelps v. Ashton, 30 Tex. 344; Magee v. McNeil, 41 Miss. 17, 90 Am.Dec. 354.

Two of the authorities cited by the appellant are not pertinent. In the case of In re Young's Estate, supra, an attempt was made to probate a letter. The court refused to probate the instrument on the ground that there was no intention to make a testamentary disposition of property. In the case of Phelps v. Ashton, supra, the court did not pass on the question of whether a contingency had occurred.

In the case of Ferguson v. Ferguson, supra [288 S.W. 834], the court held a will contingent which contained the following clause:

"I am going on a journey and I may never come back alive, so I make this will; but I expect to make changes if I live."

In the case of American Trust & Safe Deposit Co. v. Eckhardt, supra [331 Ill. 261, 162 N.E. 844], the will was held conditional. It included the following clause:

"In the event that our deaths should occur simultaneously, or approximately so, or in the same common accident or calamity, or under any circumstances causing doubt as to which of us survived the other, then we hereby * * *."

Robnett v. Ashlock, supra, held a will contingent which contained the following clause:

"This 22d May, 1856. I this day start to Kentucky; I may never get back. If it should be my misfortune, I give by property to my sisters' children (Katharine, Polly, Sally, and Margaret); * * *."

The appellant only cited part of 68 C.J., sec. 256, p. 630. The section reads as follows:

"A will may be drawn to take effect only upon the happening of a specified contingency; and when so drawn a will is denominated a contingent, or conditional, will. Such a will is operative if the contingency happens or occurs, but its operation is defeated by failure or nonoccurrence of such contingency, except where it is subsequently revived or republished by the testator, and except that a codicil conditioned to take effect on a contingency which does not happen may nevertheless be operative to republish the original will.

"Whether a will is to be regarded as contingent turns upon the point whether the contingency is referred to merely as the occasion of or reason for making the will at the time it is made, or is referred to as the reason for making the particular disposition of property which is provided for, and is intended to specify the condition upon which the will is to become operative, it being only in the latter case that the will is contingent. The condition must appear upon the face of the will, and parol evidence is not admissible to show that an instrument which in form is a general or absolute will was intended to take effect only upon a contingency. Parol evidence is admissible, however, to show that the testator's intention was to make an absolute and not a contingent will; so evidence of the preservation of the document for a considerable time after the nonhappening of the contingency, or the expiration of the time of impending calamity, is

admissible to show that the testator regarded the contingency as relating to the motive inducing the making of the will, rather than as a condition to its becoming operative, and such evidence has been held to raise a presumption that the will was intended to be absolute and noncontingent. Unless the terms of a will clearly show that it was intended to be contingent, it will be regarded as absolute and unconditional."

In the three cited cases the wills were drawn to take effect upon the happening of specified contingencies and were intended to be operative only if the contingencies occurred.

■ Unless the terms of the will show that it was intended to be contingent, the will must be regarded as absolute and unconditional.

■ We are presented with a case entirely different from those cited by the appellant. In the present will, we find different language: "* * * if anything should happen that I would not return. I want my sisters * * * Brothers, * * * to have what I own * * *."

Undoubtedly the testatrix was thinking of the possibility of death or she would not have made a will. The will is general in its nature, and the reason assigned for writing the will is general in its nature. It does not appear that it was intended to be operative only during a certain period or until a certain emergency had passed. The authorities cited by the appellant involve wills that clearly show that they were intended to be operative only during a certain period of time or until an emergency had passed. This is not true in the present case.

The testatrix never revoked the will during the long period of years elapsing between its writing and her death. This is an additional reason why the will was never intended to be conditional. We are supported in our views by the cases of: National Bank of Commerce of Charleston v. Wehrle, 124 W.Va. 268, 20 S.E.2d 112; Lafayette B. Eaton v. Harrison H. Brown, 193 U.S. 411, 24 S.Ct. 487, 48 L.Ed. 730; and Watkins v. Watkins' Adm'r, 269 Ky. 246, 106 S.W.2d 975, and authorities therein cited.

■■ While we do not believe the will to be a conditional one, yet it does not, in our opinion, extend to property subsequently acquired. The will involved herein is written in the present tense, and the language is not ambiguous. It clearly shows that the testatrix intended to dispose of the property she then owned. The testatrix disposed of all the property she owned at that time and made no provision for any residue. The intention of the testatrix governs and such intention must be ascertained from the terms of the will. Article 1712, R.C.C.; Succession of Lacoume, 205 La. 511, 17 So.2d 726.

"A disposition, couched in terms present and past, does not extend to that which comes afterwards. For example, a legacy of all the books a testator possesses does not include those which he has purchased after the date of the testament." Article 1720, R.C.C.

"A disposition, couched in the future tense, refers to the time of the death of the testator. Thus, a legacy of all the furniture there shall be in the house of the testator includes that which he has purchased since the date of the testament as well as the rest." Article 1721, R.C.C.

"We concur with the District Judge in the opinion that the will speaks not from the death of Lawson, but from its date; it disposes only of property owned by the testator when it was written, not of subsequent acquisitions. C.C. 1713, 1714, 1715.

"As to property acquired after the date of the will, or not embraced in the terms of the will, the deceased died intestate, and his heirs at law inherit such portions of his estate, after the debts are discharged according to law." Lawson's Heirs v. Lawson's Executors, 12 La.Ann. 603.

In the case of Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464, the testator's will contained the following clause:

"I give and bequeath unto G. R. DeLaureal, as remuneration for years of medical services, personal, close and devoted attention, the sum of One Thousand Dollars (1,000.00) and any and every indebtedness of whatever nature and kind due and owing to me."

It was contended that Dr. DeLaureal should not receive an amount over the bequest for medical services rendered. This Court in allowing him $3,361 stated:

"Counsel for appellant contends that the quoted provisions of the will should be interpreted to mean that the testator intended the bequest to be remuneration not only for the services rendered by the legatee prior to the confection of the will, but also for the services he rendered the testator thereafter. The quoted provision of the will is not susceptible of such an interpretation. It is written in the present tense. The language is not ambiguous. It relates to, and in our opinion it clearly expresses, the testator's intention to remunerate the legatee for services rendered during the years preceding the date of the will.

"The appellant contends that Rev.Civ. Code, arts. 1720 and 1722, are governed by article 1712. Article 1712 is the general rule. We quote it: 'In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.' "

The appellant contends that the legacies bequeathed in the will are either lost or destroyed and that therefore the legacies fall. He cites Article 1700 of the Revised Civil Code and Succession of McBurney, 165 La. 357, 115 So. 618.

█ The evidence taken on the trial of the opposition is meager. It shows that some of the legacies have been lost. However, the succession is now under administration, and no inventory has as yet been made of its effects. We do not feel that we could intelligently pass on this question at this stage of the proceedings.

In view of our conclusion that the testatrix' intention was to dispose of the property she owned at the time the will was executed, the appellant, the surviving spouse, is not only entitled to his share of the community property but inherits the undisposed share of his deceased wife in such property.

"When either husband or wife shall die, leaving neither a father nor mother nor descendants, and without having disposed by last will and testament of his or her share of the community property, such undisposed of share shall be inherited by the surviving spouse in full ownership. In the event the deceased leave descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law. Should the deceased leave no descendants, but a father and mother, or either, then the share of the deceased in the community estate shall be divided in two equal portions, one of which shall go to the father and mother or the survivor of them, and the other portion shall go to the surviving spouse, who, together with father or mother inheriting in the absence of descendants, as provided above, shall inherit as a legal heir by operation of law, and without the necessity of compliance with the forms of law provided in this chapter for the placing of irregular heirs in possession of the successions to which they are called." Article 915, R.C.C., as amended by Act 408 of 1938 and Act 82 of 1942.

For the reasons assigned, the judgment of the lower court is amended so as to decree Dr. Frederick W. Hiler owner of all the property acquired during the marriage between him and his deceased wife, an undivided one-half as surviving spouse in community and the other undivided one-half as legal heir to his deceased wife. As thus amended, the judgment is affirmed. The case is now remanded to the lower court to be proceeded with according to law.

On Application for Rehearing.

PER CURIAM.

The attorneys for the brothers and sisters of Mrs. Louise Gurganus, who claim under the deceased's will of April 15, 1924, in the application for rehearing, state that due to some inadvertence they failed to notice that the case had been posted for argument in this Court, and, therefore, they did not have an opportunity to argue the issues which were decided upon briefs.

Their principal complaint is that the case of Lawson Heirs v. Lawson Executors, 12 La.Ann. 603, was referred to in our opinion, and they contend that this case was overruled in the Succession of Burnside, 35 La.Ann. 708, and Succession of Marks, 35 La.Ann. 1054.

This Court, in those two decisions, did refuse to follow the holding in the Lawson case in considering a will where the testator bequeathed the residue of his property of every description to a certain legatee. The Court, in the Succession of Burnside, supra, concluded from the language of the will that the testator intended to cover not only the property which he owned at the time of the execution of the will, but any

property which he might acquire in the future.

A reading of the will now under consideration and quoted in full in our opinion shows that the testatrix did not bequeath the residue of her property to any legatees because after stating that she wanted her sisters and brothers to have what she owned, she enumerated the particular properties that each of the legatees was to receive respectively. In this connection, we might say that her will was executed on August 15, 1924; she was married to Dr. Hiler in 1929, and she died on February 1, 1943, at which latter date, the record discloses that all of the property mentioned in her will was no longer owned by her, except the two rings which had been given to her sisters. The will does not contain any language which would indicate that the testatrix intended that the testament would cover future acquired property. Clearly, at the time she executed the will, she was unmarried and could not have contemplated the disposition of community property subsequently acquired.

The Lawson case is unnecessary to the decision herein. The provisions of Articles 1720 and 1721 of the Revised Civil Code and the holding of this Court in the case of Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464, are sufficient authority for our conclusion that the present property and not future property was sought and intended to be disposed of by the last will and testament of the deceased.

For these reasons and those assigned in our original opinion, the application for a rehearing is denied.